Hearing Date & Time: October 7, 2015 at 2:00 p.m. EDT
Objection Deadline: September 30, 2015 at 5:00 p.m. EDT

David B. Shemano, Esq.
**ROBINS KAPLAN LLP**
601 Lexington Avenue
Suite 3400
New York, NY 10022-4611
Tel:  (212) 980-7400
Fax: (212) 980-7499

- and -

Howard J. Weg, Esq.
Scott F. Gautier, Esq.
**ROBINS KAPLAN LLP**
2049 Century Park East
Suite 3400
Los Angeles, CA 90067-3208
Tel:  (310) 552-0130
Fax: (310) 229-5800

*Proposed Counsel for Debtor and Debtor in Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| GEMINI 37 WEST 24TH STREET MT LLC, | Case No. 15-12481 (JLG) |
| Debtor. | (Joint Administration Pending) |

**NOTICE OF HEARING ON DEBTOR'S MOTION FOR ORDERS
PURSUANT TO SECTIONS 105(a), 363, AND 365 OF THE
BANKRUPTCY CODE AND BANKRUPTCY RULES 6004 AND 6006
APPROVING (I) SALE PROCEDURES AND NOTICE OF THE
AUCTION RELATING THERETO, (II) THE STALKING HORSE
PURCHASE AGREEMENT, (III) SALE OF CERTAIN REAL PROPERTY
TO BRIDGETON ACQUISITIONS OR A PARTY MAKING A**

**HIGHER OR BETTER OFFER, FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS OR ENCUMBRANCES, AND (IV) GRANTING RELATED RELIEF**

**PLEASE TAKE NOTICE,** that Gemini 37 West 24th Street MT, LLC (the "Debtor" or "Seller"), filed the Debtors' Joint Plan Of Reorganization Dated September 3, 2015 (the "Plan") and a motion (the "Sale Motion") seeking (i) the entry of an order (the "Procedures Order") pursuant to Sections 105(a), 363, and 365 of Title 11 of the United States Code (the "Bankruptcy Code") and Rules 6004 and 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and pursuant to the amended guidelines adopted by General Order M-383 (a) approving bidding procedures (the "Sale Procedures") in connection with the sale (the "Sale") of the real property located at 52 West 13th Street, New York, NY (the "Property") to Bridgeton Acquisitions LLC ("Purchaser"), as more particularly described in the purchase and sale agreement (together with the related sale documents, the "Purchase Agreement"), Annexed to the Sale Motion as Exhibit "A"; (b) approving the Purchase Agreement; (c) scheduling an auction (the "Auction") (if a qualified competing bid, other than Purchaser's, is timely received) and, at the election of the Debtor, a sale hearing (the "Sale Hearing"); and (d) approving the form of notice of such Sale Procedures, the Auction and the Sale Hearing; and (ii) if the Debtor requests a Sale Hearing (rather than seeking approval of the Sale under the Plan), entry of an order (the "Sale Order") (a) pursuant to Sections 105(a), 363, and 365 of the Bankruptcy Code and Rules 6004 and 6006 of the Bankruptcy Rules authorizing and approving the Sale to Purchaser or to another qualified bidder

submitting a higher or better offer (the "Successful Bidder") free and clear of all liens, claims, interests or encumbrances; and (b) granting related relief.

**PLEASE TAKE FURTHER NOTICE,** that on October 7, 2015 at 2:00 p.m. EDT (the "Bid Procedures Hearing"), the Debtor, by its attorneys, Robins Kaplan LLP, will move before the Honorable James L. Garrity, United States Bankruptcy Judge, at the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, New York 10004, for entry of an order approving the Sale Procedures annexed to the Sale Motion as Exhibit "B."

**PLEASE TAKE FURTHER NOTICE,** that if the Debtor elects to schedule a separate Sale Hearing, which may be scheduled at or after the Bid Procedures Hearing, the Debtor, by its attorneys, Robins Kaplan LLP, will move before the Honorable James L. Garrity, United States Bankruptcy Judge, at the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, New York 10004, for entry of an order approving the Sale of the Property to Bridgeton Acquisitions LLC, or such other Qualified Bidder who has submitted a higher and better bid for the Property in accordance with the Sale Procedures.

**PLEASE TAKE FURTHER NOTICE,** that objections, if any, to the relief to be sought at the Bid Procedures Hearing must: (a) be in writing; (b) be filed with the Clerk of the Bankruptcy Court in accordance with the standing general order of the Bankruptcy Court for the Southern District of New York entered on January 19, 2001, establishing procedures for electronic filing, and be received in the chambers of the Honorable James L. Garrity, United States Bankruptcy Judge, United States Bankruptcy

Court, One Bowling Green, New York, New York 10004; and (c) served upon (i) the

undersigned counsel for the Debtor; (ii) the Office of the United States Trustee,

Southern District of New York, 201 Varick Street, Room 1006, New York, N.Y. 10014,

Attn: Greg Zipes; and (iii) Bridgeton Holdings, LLC 220 Fifth Avenue, 19th Floor, New

York, New York 10001, Attention:  Jeffrey D. Haroldson, so as to be actually received no

later than **September 30, 2015 at 5:00 p.m. EDT** (the "Objection Deadline").

       **PLEASE TAKE FURTHER NOTICE** that you need not appear at the Bid

Procedures Hearing if you do not object to the Sale Procedures.

       **PLEASE TAKE FURTHER NOTICE,** that the Bid Procedures Hearing or the Sale

Hearing, if one is requested and scheduled, may be adjourned from time to time

without further notice other than by announcement of the adjournment date in open

court.

Dated: New York, New York
     September 8, 2015

                    **ROBINS KAPLAN LLP**

                    By:/s/  David B. Shemano
                    David B. Shemano, Esq.
                    601 Lexington Avenue
                    Suite 3400
                    New York, NY 10022-4611
                    Tel:  (212) 980-7400
                    Fax:  (212) 980-7499

                  -and-

Howard J. Weg, Esq. (*pro hac vice* pending)
Scott F. Gautier, Esq. (*pro hac vice* pending)
2049 Century Park East
Suite 3400
Los Angeles, CA 90067-3208
Tel:  (310) 552-0130
Fax:  (310) 229-5800

*Proposed Counsel for Debtor and Debtor in Possession*

**Hearing Date & Time: October 7, 2015 at 2:00 p.m. EDT**
**Objection Deadline: September 30, 2015 at 5:00 p.m. EDT**

David B. Shemano, Esq.
**ROBINS KAPLAN LLP**
601 Lexington Avenue
Suite 3400
New York, NY 10022-4611
Tel:  (212) 980-7400
Fax: (212) 980-7499

- and -

Howard J. Weg, Esq.
Scott F. Gautier, Esq.
**ROBINS KAPLAN LLP**
2049 Century Park East
Suite 3400
Los Angeles, CA 90067-3208
Tel:  (310) 552-0130
Fax: (310) 229-5800

*Proposed Counsel for Debtor and Debtor in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re: | Chapter 11 |
| GEMINI 37 WEST 24TH STREET MT LLC, | Case No. 15-12481 (JLG) |
| Debtor. | (Joint Administration Pending) |

**DEBTOR'S MOTION FOR ORDERS PURSUANT TO SECTIONS 105(a),
363, AND 365 OF THE BANKRUPTCY CODE AND BANKRUPTCY
RULES 6004 AND 6006 APPROVING (I) SALE PROCEDURES AND
NOTICE OF THE AUCTION RELATING THERETO, (II) THE
STALKING HORSE PURCHASE AGREEMENT, (III) SALE OF
CERTAIN REAL PROPERTY TO BRIDGETON ACQUISITIONS LLC**

75621012.5

**OR A PARTY MAKING A HIGHER OR BETTER OFFER, FREE AND
CLEAR OF LIENS, CLAIMS, INTERESTS
OR ENCUMBRANCES, AND (IV) GRANTING RELATED RELIEF**

TO:  THE HONORABLE JAMES L. GARRITY,
      UNITED STATES BANKRUPTCY JUDGE:

Gemini 37 West 24th Street MT, LLC (the "Debtor" or "Seller"), hereby moves this

Court (the "Motion"): (i) for the entry of an order (the "Procedures Order") pursuant to

Sections 105(a), 363, and 365 of Title 11 of the United States Code (the "Bankruptcy

Code") and Rules 6004 and 6006 of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules") and pursuant to the amended guidelines adopted by General

Order M-383 (a) approving bidding procedures (the "Sale Procedures") in connection

with the sale (the "Sale") of the real property located at 52 West 13th Street, , New York,

NY (the "Property") to Bridgeton Acquisitions LLC(the "Purchaser"), as more

particularly described in the purchase and sale agreement (together with the related

sale documents, the "Purchase Agreement"); (b) approving the Purchase Agreement; (c)

scheduling an auction (the "Auction") (if a qualified competing bid, other than

Purchaser's, is timely received) and, if requested by the Debtors, a sale hearing (the

"Sale Hearing"); and (c) approving the form of notice of the Sale Procedures, the

Auction, and any Sale; and (ii) if the Debtor requests a Sale Hearing, after completion of

the Sale Hearing, entry of an order (the "Sale Order") pursuant to Sections 105(a), 363,

and 365 of the Bankruptcy Code and Rules 6004 and 6006 of the Bankruptcy Rules (a)

authorizing and approving the Sale to Purchaser or to another qualified bidder

submitting a higher or better offer (the "Successful Bidder") free and clear of all liens,

claims, encumbrances and interests, and (b) granting related relief, including the

Debtor's right to recover the reasonable, necessary costs and expenses of preserving, or

disposing of the Property from the proceeds of the Sale, Pursuant to Section 506(c) of

the Bankruptcy Code. In support of the Motion, the Debtor has filed the Declaration of

Douglas Hercher concurrently herewith and respectfully states as follows:

## PRELIMINARY STATEMENT

1.     Together with the affiliated debtors in these jointly-administered Chapter 11

Cases,[1] the Debtor has filed the Debtors' Joint Plan of Reorganization Dated September

3, 2015 (the "Plan") that contemplates, among other things, the Sale. By this Motion, the

Debtor seeks to establish procedures for the Sale, including approval of Sale Procedures

and certain bid protections to the Purchaser as the stalking horse bidder, in order to

facilitate the Sale, which will occur pursuant to the Plan, or, at the Debtors' option, may

proceed pursuant to a separate Sale Hearing and the entry of the Sale Order.

2.     Accordingly, in addition to approval of the Sale Procedures, by this Motion,

if the Debtor elects at or after the Bid Procedures Hearing to schedule a Sale Hearing,

the Debtor also seeks approval of the Sale of the Property to the Purchaser or another

Successful Bidder submitting a higher or better offer for the Property. The Debtor

submits that all negotiations with the Purchaser were without collusion, in good faith,

from arms'-length, fair and reasonable, and the fruit of such negotiations will inure to

the benefit of the Debtor's bankruptcy estate.

---

[1] The following affiliated debtors have moved for joint administration of their estates and chapter 11 cases: 33 Peck Slip Acquisition LLC (Case No. 15-12479); 52 West 13th P, LLC (Case No. 15-12482 ); and 36 West 38th Street LLC (Case No. 15-12480).

3.      The Debtor respectfully requests that this Court approve the relief requested in this Motion, thereby allowing the Debtor to proceed with a sale process that will inure to the benefit of the Debtor's estate and all of its constituents.

## JURISDICTION AND VENUE

4.      The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue of this proceeding is proper in this district and before this Court pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

5.      The statutory predicates for the relief requested herein are Sections 105(a), 363, 365, and 506(c) of the Bankruptcy Code and Bankruptcy Rules 6004 and 6006. The Debtor also relies upon the amended guidelines adopted pursuant to General Order M-383.

## GENERAL BACKGROUND

6.      On September 3, 2015 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.  The Debtor is authorized to continue to operate its business and manage its property as a Debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

7.      Additional factual background relating to the Debtor's business and the commencement of the chapter 11 case is set forth in detail in the *Declaration of Christopher La Mack Pursuant to Rule 1007-2 of the Local Bankruptcy Rules for the Southern District of New York In Support of Debtors' Emergency and Other 'First-Day' Motions* (the "First Day Declaration"), filed on the Petition Date [Docket No. 3] and fully

incorporated herein by reference.

## RELEVANT BACKGROUND RELATED TO SALE

8.     This section will provide the Court with the necessary background relating

to the proposed sale of the Property:

**A.     The Purchaser**

9.     The Purchaser is a Delaware limited liability company or an assignee formed

for the sole purpose of the sale of the Property.

**B.     Summary of Purchase Agreement**

10.     The salient terms of the Purchase Agreement are as follows:[2]

Purchase Price: The purchase price for the Property is at least $57,000,000.

Assets to be Sold: The Seller is selling the Property "as is" and "where is", without representations and warranties (other than as set forth in Section 1.2.7 of the Purchase Agreement) along with all appurtenances; improvements; any intangible and tangible personal property located at and used exclusively in connection with the Property; and all leases, licenses and other agreements related to the Property in effect at the time of the Sale closing. The Property shall be sold free and clear of any liens, claims, interests or encumbrances, with such liens, claims or encumbrances attaching to the proceeds of the sale.

Break-Up Fee: In the event that: (1) the Bankruptcy Court approves a higher and better sale offer other than Purchaser; (2) such sale to a Successful Bidder closes; and (3) Purchaser shall have performed all of Purchaser's obligations under this Agreement, all closing conditions have been satisfied by Purchaser, and Purchaser is ready, willing, and able to proceed with Closing, then: (i) the Earnest Deposit shall be returned to Buyer; (ii) Buyer shall be paid, from the proceeds of such sale, a break-up fee equal to One Million One Hundred Forty Thousand Dollars ($1,140,000.00); and (iii) neither the Seller nor Purchaser shall have any further rights or obligations to one another

---

[2] The Summary of the Purchase Agreement set forth in this Motion is for convenience only. To the extent that the summary differs in any way with the Purchase Agreement, the actual terms of the Purchase Agreement will control. A copy of the fully executed Purchase Agreement is annexed hereto as **Exhibit "A."** Additionally, capitalized terms contained in this section that are not otherwise defined, shall have the meanings ascribed to such term in the Purchase Agreement.

under this Agreement except for obligations that specifically survive the termination of this Agreement. Notwithstanding anything contained in this Agreement to the contrary, in the event that (i) the Bankruptcy Court approves the sale to a Successful Bidder, (ii) such Successful Bidder fails to close on the acquisition of the Property in accordance with the terms of the Sale Order, and (iii) Purchaser shall have made one or more bids during the auction process required by the Sale Procedures Order, then in such event Purchaser shall be obligated to acquire the Property in accordance with the terms of this Agreement as modified by any such bids, provided that Purchaser shall not be so obligated to close such acquisition unless Seller shall have notified Purchaser of such Successful Bidder's failure to close within thirty (30) days after entry of the Sale Order.

11.     The Purchase Agreement requires the Debtor to promptly move this Court to obtain from the Bankruptcy Court entry of a bidding procedures order, substantially in the form attached as Exhibit D (the "Sale Procedures Order"), no later than October 9, 2015.

12.     In connection with the Sale, immediately prior to the Closing, the Seller shall terminate (or shall cause the Manager to terminate) all Hotel employees employed by the Seller, and the Purchaser or the Sub-Manager shall offer to employ or continue employment of such employees of the Seller on or prior to the Closing Date on such terms and conditions as the Purchaser or the Sub-Manager shall determine.

**C.     Proposed Sale Procedures**

13.     The Debtor desires to receive the greatest value for the Property for the benefit of the Debtor's estate and all of its creditors. Although the Debtor believes the terms of the Purchase Agreement are fair and reasonable and reflect the highest and best value for the Property, it nevertheless will place the Purchase Agreement to the test

of the broader public marketplace in order to determine whether higher or better offers
are generated for the Property.

14.     Accordingly, the Sale Procedures (as summarized below) were developed
consistent with the Debtor's objective of promoting active bidding that will result in the
highest or best offer the marketplace can sustain for the Property while affording
appropriate protection to the Purchaser. Moreover, the Sale Procedures reflect the
Debtor's objective of conducting the Auction in a controlled, but fair and open fashion
that promotes interest in the Property by financially capable, motivated bidders who
are likely to close a transaction, while simultaneously discouraging non-serious offers
and offers from persons the Debtor does not believe are sufficiently capable or likely to
actually consummate a transaction.

15.     As part of the marketing efforts, subject to this Court's approval, the
Property will be for sale for approximately 30 days after entry of the order approving
the Sale Procedures. The Debtor submits that this timeframe is sufficient based on
feedback it has received from RobertDouglas (the "Real Estate Advisors") regarding the
current state of the real property market where the Property is situated.

16.     The Real Estate Advisors were hired by the Debtor prior to the filing of the
Bankruptcy Case.  Throughout November 2014, the Real Estate Advisors prepared
marketing materials for the marketing and sale efforts of the three properties.

17.     The agreed marketing strategy, which is typical for institutional-quality
properties, consisted of the following steps:

a) Prepare a high quality offering document with market study, analysis of competitors, financial projections, discussion of value enhancement opportunities, location description, physical description, maps, graphics and photographs;

b) Prepare an investment summary (which would not include detailed financial information) to establish preliminary interest;

c) Distribute the Summary and a confidentiality agreement to the target investors;

d) Provide access to diligence and underwriting data;

e) Engage investors directly via email, telephone and in direct meetings to respond to questions and market the properties;

f) Accompany investors to on-site inspections;

g) Set bid date, analyze offers, share background on bidders and assist in identifying the top bidders and work with owner to complete the sale on the best possible terms (both price and the financial capability of the buyer being considered).

18.   On December 16, 2014 the Real Estate Advisors officially began marketing efforts for the Best Western Seaport Hotel, Jade Greenwich Village Hotel and Bryant Park Development Site. The hotels were marketed as a portfolio but investors were advised that offers for individual properties were welcome. Highlights of the overall marketing included:

a) an initial marketing email with the Summary and confidentiality letter to 4,832 prospective purchasers in 11 countries on December 16th;

b) a follow-up email to set the bid date on January 23, 2015 to 2,951 investors (narrowed down to reflect "declines" received previously);

c) 116 investment firms executed the confidentiality agreement;

d) 499 individuals were provided access to the underwriting material (reflecting the fact that multiple individuals from firms were accessing the diligence);

e) 39 formal tours of the three properties and many investors toured the properties independently;

f) The Real Estate Advisors received 17 qualified offers for the properties.

19.    The following information summarizes key provisions of the Sale Procedures, but are qualified in their entirety by reference to the actual Sale Procedures attached hereto as Exhibit "B":

a. Bidding Requirements. For any potential bidder who wishes to participate and submit a bid ("Acceptable Bid") with respect to the Property, it must satisfy the following criteria (the "Bidding Requirements") to be an "Acceptable Bidder." An Acceptable Bidder is a bidder who delivers to the Debtor a written and binding offer on or before the Bid Deadline (as defined below) that includes each of the following:

b. a bid for the Property in its entirety for a cash price equal to or greater than $58,640,000;

c. representations that the Acceptable Bidder is prepared to enter into a legally binding purchase and sale agreement for the acquisition of the Property on terms and conditions no less favorable to the Debtor than the terms and conditions contained in the Purchase Agreement;

    d.  a clean and duly executed purchase agreement (the "<u>Modified Purchase Agreement</u>") and a marked Modified Purchase Agreement reflecting all of the variations from the Purchase Agreement and any exhibits or attachments thereto;

    e.  representations that the Acceptable Bidder's offer shall remain open and is irrevocable until the closing of the purchase of the Property if such Acceptable Bidder is ultimately the Successful Bidder (as defined below);

    f.  that the Acceptable Bidder does not request or is not entitled to any transaction or break-up fee, expense reimbursement or similar type of payment;

    g.  full disclosure and the identity of each entity that will be bidding for the Property or otherwise participating in connection with the bid made the Acceptable Bidder;

    h.  a cash deposit or cashier's check in the amount of $5,864,000 (the <u>Good Faith Deposit</u>"), which Escrow Agent, Kensington Vanguard National Land Services, will hold in a segregated account containing only deposits received from Acceptable Bidders and will be subject to the terms set forth in paragraph 10 of these Sale Procedures;

    i.  representations that the Acceptable Bidder is financially capable of consummating the transaction contemplated by the Modified Purchase Agreement;

    j.  such financial and other information that will allow the Debtor to make a reasonable determination as to the Acceptable Bidder's financial and other capabilities to consummate the transaction contemplated by the Modified Purchase Agreement;

    k.  that the Modified Purchase Agreement does not contain any due diligence contingencies of any kind;

    l.  evidence that the Acceptable Bidder has received debt and/or equity funding commitments or has financial resources readily available sufficient in the aggregate to finance the purchase of the Property, which evidence is satisfactory to the Debtor in its reasonable discretion;

    m. evidence of authorization and approval from the Acceptable Bidder's board of directors (or comparable governing body) with respect to the submission, execution, delivery, and closing of the Modified Purchase Agreement (where applicable);

n.  admissible evidence in the form of affidavits or declarations establishing the Acceptable Bidder's good faith, within the meaning of Bankruptcy Code §§ 363(m) & (n); and

o.  other information reasonably requested by the Debtor in its effort to determine if the Acceptable Bidder is a Qualified Bidder (as defined below).

p.  An Acceptable Bid submitted by the Bid Deadline by an Acceptable Bidder that meets each of the above requirements shall be considered by the Debtor, in consultation with the Real Estate Advisors, to determine that such Acceptable Bids are deemed a "Qualified Bid" submitted by a "Qualified Bidder". Notwithstanding anything in these Sale Procedures to the contrary, Purchaser (i) is deemed to have satisfied each of the Bidding Requirements set forth in these Sale Procedures and is not required to undertake any other Bidding Requirements should such be subsequently modified, (ii) the Purchase Agreement is a Qualified Bid, and (iii) Purchaser is a Qualified Bidder.

q.  Bid Deadline. All Acceptable Bids must be submitted by no later than November 5, 2015, at 4:00 p.m. (EDT) (the "Bid Deadline") to be eligible to be considered a Qualified Bid. Prior to the Bid Deadline, Acceptable Bidders shall deliver written copies of their bids to counsel to the Debtor, Robins Kaplan LLP, 2049 Century Park East, Suite 3400, Los Angeles, CA 90067 Attn. Scott Gautier. The Debtor, with the assistance of counsel and the Real Estate Advisors, shall review any Acceptable Bid and shall make a determination regarding whether such Acceptable Bid is a Qualified Bid and shall notify Acceptable Bidders whether their Acceptable Bids have been determined to be Qualified Bids by no later than November 9, 2015, at 9:00 a.m. (EDT). The Debtor, at the same time of notifying the Qualified Bidders, shall also notify Purchaser of any Qualified Bids. For the avoidance of doubt, should no other Acceptable Bids be received by the Debtor by the Bid Deadline, then the Purchaser will be determined to be the Successful Bidder.

r.  Auction. In the event that the Debtor receives by the Bid Deadline one or more Qualified Bids (other than by Purchaser), the Debtor shall conduct an auction with respect to the Property (the "Auction"). The Auction shall take place on **November 10, 2015, at 12:00 p.m. (EDT)** (the "Auction Time") at the offices of Robins Kaplan LLP, 601 Lexington Avenue, 34th Floor, New York, New York 10018, or such other location that the Debtor, in consultation with the Real Estate Advisor, determines will enhance the prospects for higher or better bidding on the Property. To the extent the location of the Auction is changed, the Debtor shall notify all Qualified Bidders, Purchaser, and other invitees via email or facsimile (only to the extent the Debtor does not have an email address for a party) not later than one (1) business day before the Auction Time (or re-scheduled Auction Time, as applicable). If, however, no such other Qualified Bid

is received by the Bid Deadline, then the Auction will not be held, and Debtor shall so notify Purchaser no later than one (1) business day after the Bid Deadline. The Auction shall be governed by the following procedures:

s.  Only representatives of the Debtor, the Purchaser, and the Qualified Bidders are eligible to participate at the Auction;

t.  All bids shall be made and received in one room, on an open outcry basis, and all other Qualified Bidders will be entitled to be present for all bidding, and all material terms of each bid shall be fully disclosed to Purchaser and all other Qualified Bidders;

u.  The Auction will be conducted so that the Purchaser and each Qualified Bidder will be informed of the previous bid;

v.  Only the Purchaser and Qualified Bidders shall be entitled to make any subsequent bids at the Auction;

w.  Qualified Bidders may submit successive bids in increments of at least $250,000, unless otherwise modified at the Auction;

x.  The Purchaser, if the Successful Bidder, will receive a credit equal to the amount of its break-up fee and does not waive its break-up fee by participating in the Auction and submitting subsequent bids (*i.e.*, bids other than the offer in the Purchase Agreement);

y.  The Purchaser and each Qualified Bidder will be permitted a fair amount of time to respond to the previous bid at the Auction;

z.  Bidding shall commence at the amount of the highest or best Qualified Bid submitted by the Qualified Bidders by the Bid Deadline;

aa. The Purchaser and other Qualified Bidders shall participate in person at the Auction (or through a method reasonably designated by Debtor), through a duly authorized representative with authority to bind the bidding entity;

bb. The Purchaser and each Qualified Bidder shall be required to confirm that it has not engaged in any collusion with respect to the bidding or the sale;

cc. The Auction shall continue in one or more rounds until there is only one Qualified Bid the Debtor determines, after review of such bid on the bases of its financial and contractual terms, to be the highest or best offer (the "Successful Bid") submitted at the Auction from among the Qualified Bidders and Purchaser. The Qualified Bidder submitting such Successful Bid shall become the

"Successful Bidder," and shall have such rights and responsibilities set forth in the Purchase Agreement or the Modified Purchase Agreement, as applicable;

dd. At the end of the Auction, the Debtor shall also announce the next highest or otherwise best offer after the Successful Bid(s) (the "Next Highest Bid," and the Qualified Bidder(s) that submitted such bid, the "Next Highest Bidder");

ee. The close of the Auction will be formally announced by the Debtor, and no bids made after such announcement will be eligible to be considered a Successful Bid and will not be considered by the Bankruptcy Court at the Sale Hearing (as defined below);

ff. All Qualified Bidders at the Auction shall be deemed to have consented to the core jurisdiction of the Bankruptcy Court and waived any right to a jury trial in connection with any disputes relating to the Auction, these Sale Procedures, and the construction and enforcement of the Qualified Bidders' Modified Purchase Agreement(s), as applicable; and

gg. The Debtor will arrange for the actual bidding at the Auction to be transcribed by a court reporter.

hh. Acceptance of the Successful Bid. The Debtor shall have accepted a Qualified Bid as a Successful Bid only when (a) such bid is declared the Successful Bid at the Auction, (b) definitive documentation, other than by Purchaser, has been executed in respect thereof, and (c) the Bankruptcy Court has approved the Successful Bid by an entered/docketed Confirmation Order or Sale Order. For the avoidance of doubt, should no Acceptable Bids be received by the Debtor by the Bid Deadline, then the Purchaser will be determined to be the Successful Bidder.

ii. Sale Hearing. The Successful Bid will be subject to approval by the Bankruptcy Court as part of either a Plan and entry of the Confirmation Order or by separate hearing (the "Sale Hearing") seeking approval of the sale of the Property to the Successful Bidder and entry of the Sale Order. For the avoidance of doubt, should no other Acceptable Bids be received by the Debtor by the Bid Deadline, then the Purchaser will be determined to be the Successful Bidder. Please be advised that approval of the Sale shall be pursuant to a Plan, however, the Debtor reserves the right, at its sole election if there is an Auction, to seek approval of the Sale at the Sale Hearing, otherwise the Purchaser and the Debtor will determine the most expedient and reasonable method to obtain approval of the Sale. If scheduled, the Sale Hearing will be noticed at such time as counsel may be heard in the Bankruptcy Court. The Sale Hearing may be adjourned by consent of the parties or an order of the Court from time to time on notice to creditors and other parties in interest, or without further notice other than by

announcement of the adjournment in open court on the date scheduled for the Sale Hearing or notice of the adjournment filed on the Court's Docket prior to the date scheduled for the Sale Hearing.

jj. Closing. The closing to the Successful Bidder shall take place at the offices of counsel to the Debtor Robins Kaplan LLP, 601 Lexington Avenue, New York, New York 10018 by no later than December 18, 2015.

kk. Return of Good Faith Deposit. Good Faith Deposits submitted by Qualified Bidders (other than the Successful Bidder and the Next Highest Bidder) that have not been forfeited shall be returned within two (2) business days of the entry of the Confirmation Order or the Sale Order or such other time agreed upon by the Qualified Bidder and the Debtor. The Good Faith Deposit of the Successful Bidder shall be held until the closing of the Sale and applied in accordance with the Purchase Agreement or the Modified Purchase Agreement, as applicable. Within two (2) business days of the closing of the Sale under the Purchase Agreement or the Modified Purchase Agreement, the Good Faith Deposit of the Next Highest Bidder shall be returned to such Next Highest Bidder.

ll. Designation of Next Highest Bid. At the conclusion of the Auction and the selection of the Successful Bidder, the Debtor will also announce the Next Highest Bid and the Next Highest Bidder. The Next Highest Bid shall remain open until the first business day following the closing of the Sale of the Property to the Successful Bidder.

mm. Failure to Close. If, following the entry of the Confirmation Order or the Sale Order, the Successful Bidder fails to consummate the Sale because of a breach or failure to perform on the part of the Successful Bidder, the defaulting Successful Bidder's Good Faith Deposit shall be forfeited to the Debtor. The Debtor shall also have the right to seek any and all other remedies and damages from the defaulting Successful Bidder. Additionally, if the Successful Bidder fails to close the Sale, the Debtor may, without further Bankruptcy Court approval, designate the Next Highest Bid of the Next Highest Bidder to close the Sale of the Property within seven (7) calendar days after such designation by the Debtor. The Debtor will notify Purchaser of the failure to close with the Successful Bidder and designation of the Next Highest Bid`.

## RELIEF REQUESTED

20.     By this Motion, the Debtor requests entry of the Procedures Order as

contemplated by General Order M-383 (i) approving the Sale Procedures, (ii) approving

the Bidding Protections, and (iii) scheduling an Auction and, if requested by the Debtor,

a separate Sale Hearing with respect to the Sale in the event a Qualified Bid from an

entity other than Purchaser is timely received. In addition, provided that the Court

enters the Procedures Order and the Debtor elects to hold a separate Sale Hearing, the

Debtor further requests entry of the Sale Order, upon completion of the Sale Hearing (i)

authorizing and approving the Sale to Purchaser or any other Successful Bidder, as the

case may be, free and clear of all liens, claims, interests or encumbrances, (ii) approving

the Purchase Agreement and (iii) granting related relief, including the Debtor's right to

recover the reasonable, necessary costs and expenses of preserving, or disposing of the

Property from the proceeds of the Sale.

## BASES FOR REQUESTED RELIEF

**D.     The Break-up Fee to Purchaser is Appropriate**

21.     The Purchase Agreement provides that the Purchaser will be entitled to a

break-up fee of $1,140,000, only if the Debtor closes with a Successful Bidder other than

Purchaser on an alternative transaction and up to $100,000 in out-of-pocket costs and

expenses, only if the Seller willfully or intentionally breaches the Purchase Agreement.

In the Southern District of New York, it is common for a stalking horse bidder to receive

a break-up fee equal to 2% to 3% of the purchase price plus expense reimbursement. *See*

*Official Committee of Subordinated Bondholders v. Integrated Resources Inc. (In re Integrated*

*Resources Inc.)*, 147 B.R. 650, 662 (S.D.N.Y. 1992).

22.     Here, the Debtor negotiated with the Purchaser for a break-up fee of

$1,140,000 (2.0% of the Purchase Price). It is respectfully submitted that if the

Purchaser's offer establishes the floor which leads to the sale of the Property to another

interested party, the proposed break-up fee is appropriate.

**E.**   **The Sale of the Property is Within the Debtor's Sound Business Judgment**

23.    The Debtor contemplates that the Sale will be consummated in connection

with the confirmation of the Plan. However, the Debtor reserves the right, at its sole

election if there is an Auction, to seek approval of the Sale at the Sale Hearing,

otherwise the Purchaser and the Debtor will collectively determine the most expedient

and reasonable method to obtain approval of the Sale.

24.    Bankruptcy Code § 363(b)(1) provides: "[t]he Debtor, after notice and a

hearing, may use, sell, or lease, other than in the ordinary course of business, property

of the estate." 11 U.S.C. § 363(b)(1). Section 105(a) of the Bankruptcy Code provides in

relevant part: "[t]he Court may issue any order, process, or judgment that is necessary

or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

25.    A debtor should be authorized to sell assets out of the ordinary course of

business pursuant to Bankruptcy Code § 363 and if it demonstrates a sound business

purpose for doing so. *See Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*,

722 F.2d 1063, 1070 (2d Cir. 1983); *see also Titusville Country Club v. Pennbank (In re*

*Titusville Country Club)*, 128 B.R. 396, 399 (Bankr. W.D. Pa. 1991) (stating that "sound

business purpose test" is appropriate); *In re Del. & Hudson Ry. Co.*, 124 B.R. 169, 177 (D.

Del. 1991) (sale of substantially all of debtor's assets outside of reorganization plan is

appropriate when sound business reason justifies such sale).

26.    Courts have applied four factors in determining whether a sound business justification exists: (i) whether a sound business reason exists for the proposed transaction; (ii) whether fair and reasonable consideration is provided; (iii) whether the transaction has been proposed and negotiated in good faith; and (iv) whether adequate and reasonable notice is provided. *See Lionel*, 722 F.2d at 1071 (setting forth "sound business" purpose test); *see also Del. & Hudson Ry.*, 124 B.R. at 175 (adopting *Lionel* factors in determining whether sound business purpose exists for sale outside ordinary course of business); *cf. In re Abbotts Dairies of Pa., Inc.*, 788 F.2d 143, 147-49 (3d Cir. 1986) (implicitly adopting articulated business justification test of Lionel and adding "good faith" requirement).

27.    Here, each of the four factors has been satisfied. First, there is more than adequate business justification to sell the Property to Purchaser and to enter into the Purchase Agreement. To the best of the Debtor's knowledge, the Purchaser's offer exceeds the total amount of secured claims against the Property. After payment of administrative expenses, the sale of the Property is anticipated to pay all unsecured creditors in the Debtor's estate. The Debtor's unsecured creditors total less than $400,000, according to the Debtor's schedules.

28.    With respect to the second factor, Purchaser has offered substantial value for the Property and is prepared to consummate the transaction upon Bankruptcy Court approval and the other terms and conditions of the Purchase Agreement. As set forth above, the Purchase Agreement requires Purchaser to pay at least $57,000,000 in consideration for the Property. The Debtor respectfully submits that such consideration

is both fair and reasonable for the Property, based on a study of what comparable

commercial properties are selling for in the area near where the Property is situated.

29.    The Property was the object of a thorough marketing process by the Real

Estate Advisor prior to the Petition Date and will be again thoroughly marketed by the

Real Estate Advisor. Moreover, the sale of the Property to Purchaser is subject to

competing bids, thereby enhancing the Debtor's ability to receive the highest or best

value for the Property. Consequently, the fairness and reasonableness of the

consideration to be received by the Debtor will ultimately be demonstrated by a

"market check" through the auction process, which is the best means for establishing

whether a fair and reasonable price is being paid. *See Gucci*, 126 F.3d at 390 ("where the

purchaser is found to have acted in good faith the auction price suffices to demonstrate

that the purchaser paid 'value' for the assets").

30.    As to the third factor, the Debtor and Purchaser are proceeding in good faith.

The Purchaser is not personally known to the Debtor and the Purchase Agreement was

negotiated without collusion, in good faith and at arms'-length. The sale of the Property

still reflects the highest and best price for it. As such, this third *Lionel* factor has been

met.

31.    With respect to the last factor, as described more fully below in the <u>Notice</u>

<u>and Publication</u> section, the Debtor will provide adequate and reasonable notice of the

proposed sale of the Property in a recognized publication. The Sale Procedures

contemplate a bid deadline of November 5, 2015; thus, providing any interested parties

with sufficient time to conduct their due diligence in order to determine whether to

proceed with a bid to acquire the Property.

32.    Under these circumstances, therefore, sound business reasons exist that

justify the sale of the Property outside the ordinary course of business. Accordingly, this

Court should approve the Sale.

**F.    Purchaser or Successful Bidder Should be Entitled
to the Protections of Bankruptcy Code § 363(m)**

33.    Pursuant to Bankruptcy Code § 363(m), a good faith purchaser is one who

purchases assets for value, in good faith, and without notice of adverse claims. *See*

*Licensing by Paolo, Inc. v. Sinatra (In re Gucci)*, 126 F.3d 380, 390 (2d Cir. 1997); *In re Mark*

*Bell Furniture Warehouse, Inc.*, 992 F.2d 7, 9 (1st Cir. 1993); *In re Abbotts Dairies of Pa., Inc.*,

788 F.2d at 147; *In re Willemain v. Kivitz*, 764 F.2d 1019, 1023 (4th Cir. 1985).

34.    The Purchase Agreement is the product of extensive arms'-length

negotiations between the Debtor and Purchaser. These negotiations have involved

substantial time and energy by the parties and their professionals, and the Purchase

Agreement reflects give-and-take and compromises by both sides. Additionally, the

Sale Procedures ensure that a prospective purchaser will not be able to exert any undue

influence over the Debtor. Under the circumstances, this Court should therefore find

that (i) the sale of the Property was without collusion and is the result of good faith

arms'-length negotiations and (ii) Purchaser or the Successful Bidder is entitled to all of

the protections of Bankruptcy Code § 363(m).

**G.    The Sale Satisfies the Requirements of Bankruptcy Code § 363(f)
for a Sale Free and Clear of Liens, Claims, Interests or Encumbrances**

35.    While the Debtor believes that the only liens on the Property relate to the

Secured Notes of CEMF 1 USC LLC, out of an abundance of caution, it is seeking a

finding, pursuant to Bankruptcy Code § 363(f), to the extent that there are other junior

liens on the Property. Under Bankruptcy Code § 363(f), a Debtor may sell property free

and clear of any interest in such property of an entity other than the estate only if,

among other things:

> (1)    applicable non-bankruptcy law permits sale of such property free and
> clear of such interest;
> (2)    such entity consents;
> (3)    such interest is a lien and the price at which such property is to be sold
> is greater than the aggregate value of all liens on such property;
> (4)    such interest is in bona fide dispute; or
> (5)    such entity could be compelled, in a legal or equitable proceeding, to
> accept a money satisfaction of such interest.

11. U.S.C. § 363(f). Because Bankruptcy Code § 363(f) is drafted in the disjunctive,

satisfaction of anyone of its five (5) requirements will suffice to approve the sale of the

Property "free and clear" of liens, claims, interests or encumbrances (collectively, the

"Encumbrances"). *See* 11 U.S.C. § 363(f); *Mich. Employment Sec. Comm'n v. Wolverine

Radio Co. (In re Wolverine Radio Co.)*, 930 F.2d 1132, 1147 n.24 (6th Cir. 1991) (recognizing

that Bankruptcy Code § 363(f) is written in disjunctive, and holding that court may

approve sale "free and clear" provided that at least one subsection of § 363(f) is met),

*cert. dismissed*, 503 U.S. 978 (1992); *Citicom Homeowners Servs., Inc. v. Elliot (In re Elliot)*, 94

B.R. 343, 345 (E.D. Pa. 1988) (same); *see also In re THQ Inc.*, 2013 WL 428623 (Bankr. D.

Del. Jan. 24, 2013) (entry of sale order free and clear of liens, claims, and encumbrances,

including claims under Fair Labor Standards Act); *see In re PTC Alliance Corp.*, 2010 WL

5054211 (Bankr. D. Del. 2010) (same); *see also Precision Industries, Inc. v. Qualitech Steel

SBQ*, LLC, 327 F.3d 537 (7th Cir. 2003) (entry of sale order free and clear of lease); *see

also Cheslock-Bakker & Associates, Inc. v. Kremer (In re Downtown Athletic Club of New York

City, Inc.)*, 2000 WL 744126 (S.D.N.Y., 2000) (same).

36.    To the extent that any liens exist on the Property, the Debtor is confident that

it will obtain any necessary consent on or before the Sale Hearing, thereby satisfying

Bankruptcy Code § 363(f)(2). Additionally, it is anticipated that the proceeds from the

sale of the Property will exceed the value of any liens on the Property, thereby

satisfying Bankruptcy Code § 363(f)(3). Finally, the other provisions of Bankruptcy

Code § 363(f) may also apply to certain liens and interests.

## NO PRIOR REQUEST

37.    No previous request for the relief sought herein has been made to this or any

other Court.

## NOTICE AND PUBLICATION

38.    The Debtor proposes to serve notice of the Motion by U.S. Mail to (i) the

Office of the United States Trustee for the Southern District of New York; (ii) all

creditors; (iii) counsel to Purchaser; (iv) the Internal Revenue Service and (v) all other

parties that have filed a notice of appearance and demand for service of papers in this

bankruptcy case under Bankruptcy Rule 2002 (the "Bidding Procedures Notice

Parties").

39.     Provided the Court enters the proposed Procedures Order, the Debtor
requests that pursuant to the Procedures Order, no later than three (3) business days
after entry of the Procedures Order, the Debtor (or its agents) shall serve a copy of the
Procedures Order (including the Notice of Auction and Sale Hearing substantially in
the form attached as **Exhibit "C"** hereto) upon the following by first-class mail: (i) the
Office of the United States Trustee for the Southern District of New York; (ii) counsel to
Purchaser; (iii) all federal, state and local regulatory or taxing authorities or recording
offices that are reasonably known by the Debtor to have an interest in the relief
requested by this Motion; (iv) all parties known by the Debtor to have expressed a bona
fide interest in acquiring the Property; (v) the Internal Revenue Service; (vi) the United
States Attorney's office; (vii) all known creditors of the Debtor (or their counsel, if
represented by counsel), and (viii) all entities who have filed a notice of appearance and
request for service of papers in the Debtor's case (collectively, the "Auction and Sale
Notice Parties").

40.     The Debtor (or its agents) shall arrange to place advertisements in **The New
York Times and The Wall Street Journal** (the "Advertisements") advertising the Sale of
the Property and advising interested parties of the Bid Deadline, date of the Auction
and how such parties could receive additional information. The Advertisements shall
contain the salient terms set forth in the Notice of Auction and be published as
promptly as possible after entry of the Procedures Order.

41.     The Debtor believes that the foregoing notice procedures to the Bidding
Procedures Notice Parties, the Auction and Sale Notice Parties and other parties in

interest is sufficient to provide effective notice of the Sale Procedures, the Auction and

the Sale to potentially interested parties in a manner designed to maximize the chance

of obtaining the broadest possible participation while minimizing the costs to the estate.

Accordingly, the Debtor requests that the Court find that notice in this manner is

sufficient and that no further notice of the Sale Procedures or the Auction is required.

**WHEREFORE,** the Debtor respectfully requests that this Court enter the

Procedures Order (attached hereto as **Exhibit "D"**): after a hearing (a) approving the

Sale Procedures; (b) scheduling an Auction and, if requested under the Sale Procedures,

a Sale Hearing; and (c) approving the Notice of Auction and Sale Hearing. In addition,

the Debtor respectfully requests that, if the Debtor elects at or after the Bid Procedures

Hearing to schedule a separate Sale Hearing, this Court at the Sale Hearing enter an

order: (a) authorizing the Debtor to sell the Property free and clear of all liens, claims,

interests or encumbrances, and (b) approving the Purchase Agreement. The Debtor

further requests that this Court grant such other and further relief as is just and proper.

Dated: New York, New York
         September 8, 2015

                        **ROBINS KAPLAN LLP**


                        By:/s/  David B. Shemano
                        David B. Shemano, Esq.
                        601 Lexington Avenue
                        Suite 3400
                        New York, NY 10022-4611
                        Tel:  (212) 980-7400
                        Fax:  (212) 980-7499

                        -and-

Howard J. Weg, Esq.
Scott F. Gautier, Esq.
2049 Century Park East
Suite 3400
Los Angeles, CA 90067-3208
Tel:  (310) 552-0130
Fax:  (310) 229-5800

*Proposed Counsel for Debtor and Debtor in Possession*