**Exhibit A**

# SALE PROCEDURES

The following bidding and sale procedures (the "Sale Procedures"), which were approved by the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") by order (the "Sale Procedures Order") (Docket No. [__]), dated [_____], 2015, shall govern the sale/auction process for the real property located at 37 West 24th Street, New York, NY 10011 (the "Property").

Gemini 37 West 24th Street MT, LLC (the "Debtor"), will seek entry of an order from the Bankruptcy Court either (a) confirming a plan of reorganization pursuant to which a sale of the Property shall occur or (b) separately authorizing and approving the sale of the Property free and clear of liens, claims, interests or encumbrances, subject to the terms of any purchase agreement, to the Successful Bidder (as defined below) at the Auction (as defined below). The Debtor has entered into that certain Purchase and Sale Agreement (the "Purchase Agreement"), by and between the Debtor, as seller, and Bridgeton Acquisitions LLC, as Purchaser (the "Purchaser"), dated as of September 2, 2015 as modified by the Sale Procedures Order. The sale proposed in the Purchase Agreement is subject to higher or better offers. Interested parties may submit bids to purchase the Property pursuant to the Sale Procedures set forth below.

The Auction (as defined below) to sell the Property (the "Sale") will be advertised in The New York Times and The Wall Street Journal. Separately, the Property shall be marketed by the broker to be approved by the Court.

1.  Approvals. The Sale shall in all respects be subject to approval by the Bankruptcy Court and in compliance with (i) the applicable provisions of the Bankruptcy Code, (ii) the Bankruptcy Rules, and (iii) any other applicable rules and law.

2.  Assets to be Sold. As more fully set forth in the Purchase Agreement, the Seller is selling the Property, along with all appurtenances, improvements, any intangible and tangible personal property located at and used exclusively in connection with the Property; and all leases, licenses and other agreements related to the Property in effect at the time of the closing of the Sale. The Property shall be sold free and clear of liens, claims, interests or encumbrances, with such liens, claims, interests or encumbrances attaching to the proceeds of the Sale.

3.  Sale As Is, Where Is. The Property shall be sold "**AS IS, WHERE IS**", without any representation or warranty of any type whatsoever, other than as may be contained in the Purchase Agreement.

4.  Bidding Requirements. For any potential bidder who wishes to participate and submit a bid ("Acceptable Bid") with respect to the Property, it must satisfy the following criteria (the "Bidding Requirements") to be an "Acceptable Bidder." An

75640161.1

1

Acceptable Bidder is a bidder who delivers to the Debtor a written and binding offer on or before the Bid Deadline (as defined below) that includes each of the following:

(a) a bid for the Property in its entirety for a cash price equal to or greater than $58,240,000;

(b) representations that the Acceptable Bidder is prepared to enter into a legally binding purchase and sale agreement for the acquisition of the Property on terms and conditions no less favorable to the Debtor than the terms and conditions contained in the Purchase Agreement;

(c) a clean and duly executed purchase agreement (the "Modified Purchase Agreement") and a marked Modified Purchase Agreement reflecting all of the variations from the Purchase Agreement and any exhibits or attachments thereto;

(d) representations that the Acceptable Bidder's offer shall remain open and is irrevocable until the closing of the purchase of the Property if such Acceptable Bidder is ultimately the Successful Bidder or the Next Highest Bidder (as defined below);

(e) that the Acceptable Bidder does not request or is not entitled to any transaction or break-up fee, expense reimbursement or similar type of payment;

(f) full disclosure and the identity of each entity that will be bidding for the Property or otherwise participating in connection with the bid made by the Acceptable Bidder;

(g) a cash deposit or cashier's check in the amount of $3,000,000 (the Good Faith Deposit") by December 14, 2015 at Noon (EDT), which Escrow Agent, Kensington Vanguard National Land Services, will hold in a segregated account containing only deposits received from Acceptable Bidders and will be subject to the terms set forth in paragraph 10 of these Sale Procedures;

(h) representations that the Acceptable Bidder is financially capable of consummating the transaction contemplated by the Modified Purchase Agreement;

(i) such financial and other information that will allow the Debtor to make a reasonable determination as to the Acceptable Bidder's financial and other capabilities to consummate the transaction contemplated by the Modified Purchase Agreement;

(j) that the Modified Purchase Agreement does not contain any due diligence contingencies of any kind;

(k)   evidence that the Acceptable Bidder has received debt and/or equity funding commitments or has financial resources readily available sufficient in the aggregate to finance the purchase of the Property, which evidence is satisfactory to the Debtor and William T. Obeid, each in its or his reasonable discretion;

(l)   evidence of authorization and approval from the Acceptable Bidder's board of directors (or comparable governing body) with respect to the submission, execution, delivery, and closing of the Modified Purchase Agreement (where applicable);

(m)   admissible evidence in the form of affidavits or declarations establishing the Acceptable Bidder's good faith, within the meaning of Bankruptcy Code §§ 363(m) & (n);

(n)   other information reasonably requested by the Debtor in its effort to determine if the Acceptable Bidder is a Qualified Bidder (as defined below); and

(o)   notwithstanding the foregoing, the Acceptable Bidder shall not be required to provide any information that the Purchaser has not also provided to the Debtor;

An Acceptable Bid submitted by the Bid Deadline by an Acceptable Bidder that meets each of the above requirements shall be considered by the Debtor, in consultation with the Real Estate Advisor, to determine that such Acceptable Bids are deemed a "Qualified Bid" submitted by a "Qualified Bidder". Notwithstanding anything in these Sale Procedures to the contrary, Purchaser (i) is deemed to have satisfied each of the Bidding Requirements set forth in these Sale Procedures and is not required to undertake any other Bidding Requirements should such be subsequently modified, (ii) the Purchase Agreement is a Qualified Bid, and (iii) Purchaser is a Qualified Bidder.

5.   Bid Deadline. **All Acceptable Bids must be submitted by no later than December 8, 2015, at 4:00 p.m. (EDT) (the "Bid Deadline")** to be eligible to be considered a Qualified Bid. Prior to the Bid Deadline, Acceptable Bidders shall deliver written copies of their bids to counsel to the Debtor, Robins Kaplan LLP, 2049 Century Park East, Suite 3400, Los Angeles, CA 90067 Attn. Scott Gautier. The Debtor, with the assistance of counsel, the Real Estate Advisor, William T. Obeid and the Lender shall review any Acceptable Bid and shall make a determination regarding whether there is a basis to object to the Acceptable Bid being a Qualified Bid. Unless the Debtor or William T. Obeid files an objection to the Acceptable Bid becoming a Qualified Bid, then all Acceptable Bids shall be deemed Qualified Bids with no further notice. The Debtor shall notify the Purchaser, the Court, the UST, William T. Obeid and the Lender of all Qualified Bids. If the Debtor or any other party in interest objects to an Acceptable Bidder becoming a Qualified Bidder, then the objecting party shall, at any time prior to

the Auction, file with the Court a notice of objection to the Acceptable Bid with a short summary of the reasons that the Acceptable Bid should not be considered a Qualified Bid and the Court shall determine whether such Acceptable Bid shall be considered a Qualified Bid immediately prior to the Auction.  For the avoidance of doubt, should no other Acceptable Bids be received by the Debtor by the Bid Deadline, then the Purchaser will be determined to be the Successful Bidder.

6.  Auction. In the event that the Debtor receives by the Bid Deadline one or more Qualified Bids (other than by Purchaser), the Debtor shall conduct an auction with respect to the Property (the "Auction"). The Auction shall take place on **December 15, 2015 at 11:00 a.m. (EDT)** (the "Auction Time") at the United States Bankruptcy Court for the Southern District of New York, Courtroom 601, One Bowling Green, New York, NY 10004.  If, however, no such other Qualified Bid is received by the Bid Deadline, then the Auction will not be held, and Debtor shall so notify Purchaser no later than one (1) business day after the Bid Deadline. The Auction shall be governed by the following procedures:

(a) Only William T. Obeid, representatives of the Debtor, the Purchaser, and the Qualified Bidders are eligible to participate at the Auction;

(b) All bids shall be made and received in one room, on an open outcry basis, and all other Qualified Bidders will be entitled to be present for all bidding, and all material terms of each bid shall be fully disclosed to Purchaser and all other Qualified Bidders;

(c) The Auction will be conducted so that the Purchaser and each Qualified Bidder will be informed of the previous bid;

(d) Only the Purchaser and Qualified Bidders shall be entitled to make any subsequent bids at the Auction;

(e) Qualified Bidders may submit successive bids in increments of at least $100,000, unless otherwise modified at the Auction;

(f) The Purchaser, if the Successful Bidder, will not receive a credit equal to the break-up fee but does not waive its break-up fee by participating in the Auction and submitting subsequent bids (*i.e.*, bids other than the offer in the Purchase Agreement) in the event it is not the Successful Bidder;

(g) The Purchaser and each Qualified Bidder will be permitted a fair amount of time to respond to the previous bid at the Auction;

(h) Bidding shall commence at the amount of the highest or best Qualified Bid submitted by the Qualified Bidders by the Bid Deadline;

(i)  The Purchaser and other Qualified Bidders shall participate in person at the Auction (or through a method reasonably designated by Debtor), through a duly authorized representative with authority to bind the bidding entity;

(j)  The Purchaser and each Qualified Bidder shall be required to confirm that it has not engaged in any collusion or any undisclosed transactions with the Debtor or its principals with respect to the bidding or the Sale or the future operations/ownership of the Property;

(k)  The Auction shall continue in one or more rounds until there is only one Qualified Bid and the Debtor determines, after review of such bid on the bases of its financial and contractual terms and after consultation with William T. Obeid and the Lender, to be the highest or best offer (the "Successful Bid") submitted at the Auction from among the Qualified Bidders and Purchaser. The Debtor will consider the net proceeds that the Debtor will receive, including consideration of any break-up fee that would have to be paid, in considering what is the highest or best offer. The Qualified Bidder submitting such Successful Bid shall become the "Successful Bidder," and shall have such rights and responsibilities set forth in the Purchase Agreement or the Modified Purchase Agreement, as applicable;

(l)  At the end of the Auction, the Debtor shall also announce the next highest or otherwise best offer after the Successful Bid(s) (the "Next Highest Bid," and the Qualified Bidder(s) that submitted such bid, the "Next Highest Bidder");

(m) The close of the Auction will be formally announced by the Debtor, and any bids made after such announcement will be ineligible to be considered a Successful Bid and will not be considered by the Bankruptcy Court at the Sale Hearing (as defined below);

(n)  All Qualified Bidders at the Auction shall be deemed to have consented to the personal jurisdiction and to the core and non-core jurisdiction of the Bankruptcy Court and to have waived any right to a jury trial in connection with any disputes relating to the Auction, these Sale Procedures, and the construction and enforcement of the Qualified Bidders' Modified Purchase Agreement(s), as applicable;

(o)  The Debtor will arrange for the actual bidding at the Auction to be transcribed by a court reporter; and

(p)  For avoidance of doubt, a Qualified Bidder may include as a principal William T. Obeid, Dante Massaro or Christopher La Mack or any entity controlled by any such persons.

7. <u>Acceptance of the Successful Bid</u>. The Debtor shall have accepted a Qualified Bid as a Successful Bid only when (a) such bid is declared the Successful Bid at the Auction, (b) definitive documentation, has been executed in respect thereof, and (c) the Bankruptcy Court has approved the Successful Bid either through confirmation of the Plan or by the entry of a separate order approving such bid (the "<u>Sale Order</u>") has been docketed. For the avoidance of doubt, should no Acceptable Bids be received by the Debtor by the Bid Deadline, then the Purchaser will be determined to be the Successful Bidder.

8. <u>Sale Hearing</u>. The Successful Bid will be subject to approval by the Bankruptcy Court either through an order confirming a plan in this Case (a "<u>Confirmation Order</u>") or a separate Sale Order. For the avoidance of doubt, should no other Acceptable Bids be received by the Debtor by the Bid Deadline, then the Purchaser will be determined to be the Successful Bidder. Please be advised that approval of the Sale shall be pursuant to the Plan, however, the Debtor reserves the right, at its sole election, to seek approval of the Sale by separate hearing to approve the sale of the Property to the Successful Bidder (the "<u>Sale Hearing</u>"). If the Debtor so elects, the Sale Hearing will be scheduled and noticed at such time as counsel may be heard, in the Bankruptcy Court. The Sale Hearing may be adjourned by consent of the parties or an order of the Court from time to time on notice to creditors and other parties in interest, or without further notice other than by announcement of the adjournment in open court on the date scheduled for the Sale Hearing or notice of the adjournment filed on the Court's Docket prior to the date scheduled for the Sale Hearing.

9. <u>Closing</u>. The closing of the Sale to the Successful Bidder shall take place at the offices of counsel to the Debtor, Robins Kaplan LLP, 601 Lexington Avenue, New York, New York 10018 by no later than December 30, 2015, unless extended by the mutual consent of the parties.

10. <u>Return of Good Faith Deposit</u>. Good Faith Deposits submitted by Qualified Bidders (other than the Successful Bidder and the Next Highest Bidder) that have not been forfeited shall be returned within two (2) business days of the entry of the order confirming the Plan or the Sale Order or such other time agreed upon by the Qualified Bidder and the Debtor. The Good Faith Deposit of the Successful Bidder shall be held until the closing of the Sale and shall be applied in accordance with the Purchase Agreement or the Modified Purchase Agreement, as applicable. Within two (2) business days of the closing of the Sale under the Purchase Agreement or the Modified Purchase Agreement, the Good Faith Deposit of the Next Highest Bidder shall be returned to such Next Highest Bidder.

11. <u>Designation of Next Highest Bid</u>. At the conclusion of the Auction and the selection of the Successful Bidder, the Debtor will also announce the Next Highest Bid and the Next Highest Bidder. The Next Highest Bid shall remain open and irrevocable

until the first business day following the closing of the Sale of the Property to the Successful Bidder.

12. <u>Failure to Close</u>. If, following the entry of the Confirmation Order or the Sale Order, the Successful Bidder fails to consummate the Sale because of a breach or failure to perform on the part of the Successful Bidder, the defaulting Successful Bidder's Good Faith Deposit shall be forfeited to the Debtor's bankruptcy estate. The Debtor shall also have the right to seek any and all other remedies and damages from the defaulting Successful Bidder. Additionally, if the Successful Bidder fails to close the Sale, the Debtor may, without further Bankruptcy Court approval, designate the Next Highest Bid of the Next Highest Bidder to close the Sale of the Property within seven (7) calendar days after such designation by the Debtor. The Debtor will notify Purchaser of the failure to close with the Successful Bidder and designation of the Next Highest Bid and Purchaser shall have the option to match the Next Highest Bid and close the Sale.

13. <u>Waiver of Claims</u>. All Qualified Bidders, by becoming Qualified Bidders, expressly shall waive and relinquish any claims that they may have against the Debtor, the Lender and the Real Estate Advisor related to the Sale. For avoidance of doubt, if William T. Obeid is a principal of a Qualified Bidder, none of William T. Obeid's direct or derivative claims asserted in the action entitled *Obeid v. La Mack, et al.*, Case No. 14-civ-06498-LTS-MHD, pending in the United States District Court for the Southern District of New York shall be deemed waived. All bidders are required to perform their own due diligence and may not rely on any information provided. All bidders also shall waive and relinquish any and all claims against the above referenced parties related to such due diligence. All bidders acknowledge that:

(a) Any and all data provided to prospective bidders:

   (i) has been prepared for informational purposes only;

   (ii) has been prepared from materials supplied to the Real Estate Advisor by third parties; and

   (iii) is being furnished solely for use by bidders in considering their interest in acquiring the Property;

(b) By accepting data from the Debtor and/or Real Estate Advisor, the recipient acknowledges and agrees that the data has been prepared to assist the recipient in making its own evaluation of the Property and the data does not purport to be all-inclusive or to contain all of the information that a bidder may desire. In all cases, bidders should conduct their own investigation and analysis of the Property, conduct site inspections, and scrutinize all of the data. The Real Estate Advisor has assumed no responsibility for independent verification of any of the data and has not in fact in any way audited such information. The Debtor and

75640161.1                                              7

the Real Estate Advisor are not making nor will they make and expressly disclaim making any written or oral statements, representations, warranties, promises or guarantees, whether express, implied or by operation of law or otherwise, with respect to the Property and with respect to the accuracy, reliability or completeness of any data, except as expressly stated in a contract executed by the Debtor. The Debtor and the Real Estate Advisor and their respective partners, officers, directors and employees, affiliates and representatives, expressly disclaim any and all liability based on or relating or pertaining to any written or oral statements, financial information, projections, representations, warranties, promises or guarantees, whether express, implied or by operation of law or otherwise.